IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BUREAU VERITAS COMMODITIES AND TRADE, INC., | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:21-CV-00622 |
| COTECNA INSPECTION SA and SEBASTIEN DANNAUD, | § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and, in the Alternative, Failure to State a Claim and for a More Definite Statement (Doc. No. 9). Plaintiff filed a response in opposition (Doc. No. 15), and Defendants replied thereto (Doc. No. 17). After careful consideration, the Court denies the Motion.

### I. Background

Plaintiff Bureau Veritas Commodities and Trade, Inc. ("Plaintiff" or "Bureau Veritas") is a Delaware corporation headquartered in Harris County, Texas.[1] Bureau Veritas provides independent inspection, sampling, testing, and certification services to traders in the commodities business. Its Metals and Minerals ("M&M") Division provides sampling, inspection, and analysis of metals and minerals.

Defendant Cotecna Inspection SA ("Cotecna") is a Swiss corporation and global competitor of Bureau Veritas. According to Bureau Veritas, Cotecna—acting through its American subsidiary, Cotecna Inspection, Inc. ("Cotecna U.S.")—engaged in a scheme to "ransack" Bureau

---

[1] Prior to changing its name in March 1, 2020, Bureau Veritas was known as Inspectorate America Corporation. (Doc. No. 1, at 2).

Veritas's business by hiring several key employees from Bureau Veritas's M&M Division (located in Houston, Texas) and misappropriating Bureau Veritas's trade secrets, proprietary data, and confidential information. (Doc. No. 1, at 3).

According to the complaint, the alleged scheme was directed by Defendant Sebastien Dannaud ("Dannaud"), a foreign individual[2] residing in Switzerland. Dannaud is the global Chief Executive Officer (CEO) of Cotecna. According to Bureau Veritas, Dannaud conspired with Stefanus Nel ("Nel"), the most senior leader in Bureau Veritas's M&M Division, to hire away senior officials within the M&M division and to misappropriate Bureau Veritas's trade secrets and confidential information. These hirings allegedly allowed Cotecna to start a competing M&M division in North and Latin America, to build a laboratory in Louisiana, and to open a new office in Texas. Since moving to Cotecna, the former employees have allegedly begun soliciting Bureau Veritas customers into switching their business to Cotecna.

The alleged details of the purported scheme are as follows. The scheme was launched in February 2020, when Nel reached out to Dannaud. Nel, who was located in Texas, disclosed Bureau Veritas trade secrets to Dannaud, and Dannaud used this information to persuade Cotecna to hire several Bureau Veritas employees. Dannaud and Nel communicated through email and text messages while Nel was in Texas. Moreover, Dannaud met with Nel in person in Texas around late February 2020 to discuss the plan to "ransack" Bureau Veritas's M&M Division. From February 2020 onward, Defendants executed the plan. Nel and a manager of Bureau Veritas's M&M Division, along with Dannaud, worked on starting Cotecna's competing M&M business "as soon and fast as possible," which included contacting one of Bureau Veritas's outsource lab partners as well as Bureau Veritas's customers to inform them of the former employees' impending

---

[2] According to his declaration, Dannaud is a citizen of France. (Doc. No. 9, Ex. 1, at 2).

move to Cotecna and Cotecna's new M&M division. These steps were followed by several resignations of Bureau Veritas M&M Division employees between April and June 2020 and a former lab employee in September 2020. Upon their resignations, these former employees "stole" confidential and trade secret information. (Doc. No. 1, at 14–15). When they joined Cotecna they joined in nearly identical roles and began pursuing business from Bureau Veritas's M&M customers and relied upon the information they took from Bureau Veritas.

Bureau Veritas sued, seeking to recover damages from Defendants for alleged violations of the federal Defendant Trade Secrets Act (DTSA), the Texas Uniform Trade Secrets Act (TUTSA), and knowing participation in the former employees' breaches of their fiduciary duties (Doc. No. 1). Defendants subsequently filed a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and failure to state a claim under Rule 12(b)(6). (Doc. No. 9). In the alternative, Defendants request a more definite statement pursuant to Rule 12(e). Plaintiff filed a response in opposition (Doc. No. 15), and Defendants replied thereto (Doc. No. 17).

## II.    Legal Standards

### A.    Personal Jurisdiction Under Rule 12(b)(2)

A federal district court may exercise personal jurisdiction over a nonresident defendant if "(1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Where the plaintiff alleges specific jurisdiction, as here, due process requires "(1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable." *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012). The burden of

establishing personal jurisdiction over a nonresident defendant lies with the plaintiff. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010).

When a district court rules on a Rule 12(b)(2) motion without a hearing, as is the case here, the plaintiff must make a *prima facie* showing of jurisdiction. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). The court may consider the contents of the record, including affidavits or other recognized methods of discovery, in deciding whether to exercise personal jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Generally, the court accepts the plaintiff's non-conclusory, uncontroverted allegations as true, and resolves conflicts between the facts contained in the parties' affidavits in the plaintiff's favor. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

B. Failure to State a Claim Under Rule 12(b)(6)

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the

complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

    C. <u>Motion for More Definite Statement</u>

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). Rule 12(e) must be read in light of Rule 8 of the Federal Rules of Civil Procedure. *Tempur-Pedic Intern. Inc. v. Angel Beds LLC*, 902 F. Supp. 2d 958, 971 (S.D. Tex. 2012). Rule 8 requires a short and plain statement of the claim that will give notice of what the plaintiff's claim is and the grounds upon which it rests. FED. R. CIV. P. 8(a); *Twombly*, 550 U.S. at 555. Given that Rule 8 only requires a short and plain statement of claims, "a motion for more definite statement is generally disfavored and is used to provide a remedy only for an unintelligible pleading rather than a correction for lack of detail." *Pension Advisory Group, Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 707 (S.D. Tex. 2011) (citing *Davenport v. Rodriguez*, 147 F. Supp. 2d 630, 639 (S.D. Tex. 2001)).

A Rule 12(e) motion is appropriate where "a pleading fails to specify the allegations in a manner that provides sufficient notice." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *accord Pension*, 771 F. Supp. 2d at 707. "Where matters can be clarified and developed during discovery rather than the existence of a complaint that impedes the defendant's ability to form a responsive pleading, such a motion should not be granted." *Ross v. Texas*, No. H-10-2008, 2011

5

WL 5978029, at *7 (S.D. Tex. Nov. 29, 2011); *see also Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 972 (N.D. Tex. 2006). Whether to grant a motion for a more definite statement is a matter within the discretion of the trial court. *Turner v. Pavlicek*, No. H–10–00749, 2011 WL 4458757, at *16 (S.D. Tex. Sept. 22, 2011).

### III.  Discussion

A. <u>Lack of Personal Jurisdiction</u>

Defendants first contend that the complaint must be dismissed because the Defendants are not subject to the personal jurisdiction of this Court. Texas's long arm statute, TEX. CIV. PRAC. & REM. CODE § 17.042(2), confers personal jurisdiction to the greatest extent permissible under the Due Process Clause of the United States Constitution. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016). Therefore, the only question presented is whether the exercise of personal jurisdiction over Defendants is consistent with federal constitutional standards. Jurisdiction can be general or specific, but Plaintiff does not allege general jurisdiction. (Doc. No. 1, at 3). Accordingly, only specific jurisdiction is at issue.

Defendants contend that Plaintiff has failed to show specific jurisdiction over either Dannaud or Cotecna. The Court addresses specific jurisdiction with respect to each Defendant separately.

*1.  Specific Jurisdiction over Dannaud*

Bureau Veritas alleges two bases for specific jurisdiction over Dannaud: (1) the emails and text messages exchanged between Dannaud and Nel, who was in Texas; and (2) a March 2020 meeting between these two individuals, which took place in Texas. Defendants contend that neither basis suffices to confer specific jurisdiction over Dannaud, a foreign individual residing in Switzerland.

6

In response, Plaintiff contends that Dannaud purposefully availed himself of the privilege of conducting activities in Texas by communicating and meeting with Nel. These interactions, Plaintiff submits, were the means by which Dannaud recruited Nel and executed the Defendants' plan to tortiously acquire Bureau Veritas's employees, trade secret information, and customers. According to Bureau Veritas, the execution of the plan forms the basis of Plaintiff's claims against the Defendants.

As to the text and emails between Dannaud and Nel, Defendants assert that the mere exchange of communications with a forum resident is insufficient to constitute purposeful availment of the benefits and protections of forum law. Otherwise, personal jurisdiction could be exercised over a foreign national "based on the fortuity that one of the parties happens to reside in the forum state." (Doc. No. 9, at 20) (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom,* 481 F.3d 309, 312 (5th Cir. 2007)). Moreover, they emphasize that the communications were instigated by Nel, not Defendant Dannaud.

As to the significance of the meeting, the Defendants rely primarily on *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). In *Moncrief,* the foreign defendants negotiated with Moncrief to develop a Russian gas field and executed several agreements for that purpose. *Id.* at 310–11. When Moncrief filed suit in Texas alleging breach of the parties' agreements, it alleged the following as the defendants' contacts with Texas: "(1) entering into contracts with Moncrief, (2) knowing from the outset that Moncrief is a Texas resident, (3) acknowledging and approving of Moncrief's substantial performance in Texas, and (4) sending an executive to visit Texas . . . in furtherance of that performance." *Id.* at 312. The Fifth Circuit found personal jurisdiction was lacking. The court observed that all relevant agreements were executed in Russia, concerned a Russian joint venture to develop a Russian gas field, and provided that they

7

would be governed by Russian law. *Id.* As the court explained, "[a]n exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law." *Id.* (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986)). Moncrief had engaged in unilateral activities in Texas, while the defendants had not performed any activities in Texas. *Id.* While the defendants may have predicted Moncrief would perform many of its duties in Texas, the contract did not require work in Texas and it was not "clearly the hub of the parties' activities." *Id.* Finally, the court gave great weight to the fact that the contracts forming the basis of the parties' dispute contained choice of law provisions providing for Russian law. *Id.* at 313.

This case is distinguishable from *Moncrief*. First, *Moncrief* is a contract case, not a case involving allegations of trade secret misappropriation, breach of fiduciary duty and/or the commission of intentional torts. Second, the meeting in Texas in *Moncrief* related to the parties' planned activities outside of Texas. Here, by contrast, the meeting between Nel and Dannaud concerned their activities *inside* Texas, namely, Nel's prospective employment at Cotecna's competing M&M division in Texas as well as, according to Plaintiff, the planned exodus of Plaintiff's employees, all as part of Defendants' general plan to deprive the Plaintiff of its confidential information.[3] *See* (Doc. No. 16, Ex. 4, at 2). Third, the meeting within the state did not constitute merely unilateral activity on the part of Bureau Veritas. Instead, Dannaud met with Nel at Dannaud's invitation. (Doc. No. 9, Ex. 1, at 4); (Doc. No. 16, Ex. 2, at 3). Fourth, unlike

---

[3] Defendant Dannaud, in his declaration, denies having discussed at the meeting a "specific business plan" or Bureau Veritas's confidential information. (Doc. No. 9, Ex. 1, at 3). Nevertheless, this does not necessarily controvert Plaintiff's allegation that the meeting constituted part of Defendants' larger plan to "steal Bureau Veritas' M&M Division for Cotecna." (Doc. No. 1, at 13). Moreover, Dannaud admits in his declaration that he and Nel discussed "why Nel wanted to leave Bureau Veritas and his efforts to seek opportunities with Cotecna USA," and Dannaud does not deny that the meeting took place in Texas. (Doc. No. 9, Ex. 1, at 3).

*Moncrief,* here there is no choice of law provision that would prevent Texas law from applying to the dispute.

The Court is satisfied that the communications and meeting between Nel and Dannaud demonstrate Dannaud's minimum contacts with Texas. Plaintiff has demonstrated that Dannaud purposefully availed himself of the privilege of conducting activities in Texas. *See Fintech Fund, F.L.P. v. Horne*, 836 F. App'x 215, 220–21 (5th Cir. 2020). Moreover, Plaintiff's claims against Dannaud arise out of those contacts.

### 2. *Specific Jurisdiction over Cotecna*

Bureau Veritas asserts that this Court has personal jurisdiction over Cotecna because (1) it acted through Dannaud as its "agent and alter ego," and because (2) Cotecna does business in Texas through its United States subsidiary, Cotecna U.S. (Doc. No. 1, at 3–4).

The Court finds that specific jurisdiction exists over Cotecna on the basis of Dannaud's actions as corporate agent. "In general, a corporate officer's acts in their corporate capacity are commonly the basis for a corporation's contacts with a forum, given that the officer acts as the agent of the corporation." *FTC v. Educare Ctr. Servs., Inc.*, 414 F. Supp. 3d 960, 983 (W.D. Tex. 2019); *see also Int'l Shoe Co. v Washington*, 326 U.S. 310, 316–17 (1945) (finding a corporation's minimum contacts "can be manifested only by activities carried on in its behalf by those who are authorized to act for it"). Dannaud, "as Global CEO of Cotecna, actively recruited Nel and, with Nel, devised and carried out the Plan to unlawfully acquire Bureau Veritas' M&M business." (Doc. No. 15, at 22). Cotecna thus has contacts with Texas by means of the activities of Dannaud.

Since the Court finds that specific jurisdiction over Cotecna exists on the basis of Dannaud's acts as its agent, the Court does not address the second possible basis for jurisdiction,

namely, that Cotecna and its U.S. subsidiary are a single enterprise for purposes of personal jurisdiction.

3. *Fairness Inquiry*

Having found the requisite minimum contacts, the Court now evaluates whether the exercise of jurisdiction over these nonresident defendants would be fair and reasonable. The defendant must make a "compelling case" to show that the assertion of jurisdiction is unfair and unreasonable. *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018) (quotation and citation omitted). The court must balance the following factors when determining whether the exercise of jurisdiction is fair and reasonable:

> (1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies.

*Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Defendants contend that subjecting them to suit in Texas would be uniquely burdensome because they reside in or are headquartered in in Switzerland. While the Court recognizes the unique burdens placed on those who must defend themselves in a foreign legal system, *see Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 114 (1987), these burdens are outweighed by Texas's interest in resolving the case—involving the alleged misappropriation of trade secrets of a Texas business—as well as Bureau Veritas's interest in obtaining relief. *See Fintech Fund*, 836 F. App'x at 222 ("Most often, 'the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.'" (quoting *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 592 (5th Cir. 2014))). Moreover, while Defendants may have a significant burden defending a suit in Texas, Bureau Veritas would be equally burdened by

litigating in Switzerland. The Defendants chose to come to Texas to solicit the Plaintiff's employees, and the Plaintiff has not acted in any way that would involve Switzerland.

For the foregoing reasons, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is denied.

B. Failure to State a Claim Under Rule 12(b)(6)

Plaintiff asserts claims for trade secret misappropriation under the federal Defend Trade Secrets Act ("DTSA") and the Texas Uniform Trade Secrets Act ("TUTSA"). In their motion to dismiss, Defendants contend that Plaintiff has failed to specifically identify any trade secret. (Doc. No. 9, at 26). Since the DTSA and TUTSA are both based on the Uniform Trade Secrets Act, "a substantial number of provisions in the two statutes—including the definition of 'trade secret'—are either identical or very similar in many respects." *StoneCoat of Tex., LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 332–33 (E.D. Tex. 2019). The Court will therefore consider the sufficiency of Bureau Veritas's federal and state trade secret misappropriation claims together. *See, e.g., Vest Safety Med. Servs., LLC v. Arbor Env't, LLC*, No. H-20-0812, 2020 WL 4003642, at *3 (S.D. Tex. July 15, 2020) (consolidating DTSA and TUTSA analysis).

A plaintiff bringing a misappropriation of trade secrets claim must allege facts that would show that a trade secret existed. *See GE Betz. Inc. v. Moffitt-Johnston*, 885 F.3d 318, 326 (5th Cir. 2018). Both the DTSA and TUTSA define "trade secret" to include all forms or types of "business, scientific, technical, economic, or engineering information" that (1) the owner has taken reasonable measures to keep secret and (2) derives independent economic value from not being generally known or readily ascertainable through proper means. *See* 18 U.S.C. § 1839(3); TEX. CIV. PRAC. & REM. CODE § 134A.002(6). Whether something is a trade secret is generally a question of fact. *GlobeRanger Corp. v. Software AG United States of Am., Inc.*, 836 F.3d 477, 492

11

(5th Cir. 2016) (citing *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013)). The issue before the Court is therefore whether Bureau Veritas has alleged sufficient facts which, taken as true, would support that a trade secret exists.

The trade secrets alleged in Plaintiff's complaints are as follows. For its DTSA claims, Plaintiff alleges the following as trade secrets: "its profit and loss information, financial information, business plans, strategic growth strategies, sales information, operational weaknesses, marketing strategies, customer information, pricing, pricing strategies, sales volume, operational plans, employee compensation, vendor and contractor information, testing procedures, certificates, and laboratory technology." (Doc. No. 1, at 17).

For its TUTSA claims, Plaintiff alleges the following as trade secrets: "M&M Division financial information, operational processes, pricing, customer lists, customer contact information, sales strategies, growth strategies, laboratory technology, laboratory equipment lists, employee compensation information, and contractor information." (*Id.* at 21).

Defendants take issue with the foregoing categories as "vague and broad." (Doc. No. 9, at 27).[4] Defendants suggest that Plaintiff be required to identify "what compilation of customer contact information, which cost and pricing data, which customer history and preferences . . . , what laboratory equipment lists, testing procedures, or certificate templates constitute trade secrets." (Doc. No. 9, at 27).

The Court is satisfied that Bureau Veritas has met its burden at the pleading stage. "[T]he idea that a plaintiff must disclose detailed descriptions of trade secrets in a public complaint—

---

[4] Defendants also argued in their motion to dismiss that Bureau Veritas improperly stated that its trade secrets include an unbounded list of items. (Doc. No. 9, at 27). Indeed, Bureau Veritas does include a list of alleged trade secrets with the unbounded catchall "without limitation" at paragraph 15 of the complaint. (Doc. No. 1, at 6). Such "unbounded allegations" have been held insufficient to state a trade secret claim. *See Am. Biocarbon, LLC v. Keating*, No. CV 20-00259-BAJ-EWD, 2020 WL 7264459, at *4 (M.D. La. Dec. 10, 2020). Bureau Veritas's response, however, clarifies that the specific trade secrets at issue are only those that are expressly identified in the substantive Causes of Action sections of the Complaint, which do not contain unbounded lists. (Doc. No. 15, at 33).

12

including, according to Defendant, pricing data and specific client names—without any protective order in place would likely defeat the entire purpose of attempting to protect those trade secrets in the first place." *Digital Assurance Certification, LLC v. Pendolino*, No. 6:17-CV-72-ORL-41TBS, 2017 WL 10084904, at *2 (M.D. Fla. Sept. 27, 2017). Accordingly, Defendants' Motion to Dismiss for Failure to State a Claim is denied.

C. More Definite Statement

Defendants have, in the alternative, moved for a more definite statement pursuant to Rule 12(e). They request that Bureau Veritas be required to "identify whether the information allegedly misappropriated was intangible, an electronic file, or a document." Further, "[i]f the information is intangible, it should be described with sufficient particularity to enable each individual defendant to determine exactly what the information is. If the information is an electronic file or printed document, Bureau Veritas should be required to identify the specific file or document by name and date or other characteristic sufficient to provide notice . . . as to the identity of the file or document."

As stated above, Bureau Veritas has already met its burden at the pleading stage. The information requested by Defendants would hold Plaintiff to an impermissibly high standard at this early stage of the lawsuit. "Where matters can be clarified and developed during discovery rather than the existence of a complaint that impedes the defendant's ability to form a responsive pleading, such a motion should not be granted." *Ross v. Texas*, No. H-10-2008, 2011 WL 5978029, at *7 (S.D. Tex. Nov. 29, 2011). Any further delineation needed can be achieved through discovery. The Motion for a More Definite Statement is accordingly denied.

13

## IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and, in the Alternative, Failure to State a Claim and for a More Definite Statement (Doc. No. 9) is **DENIED**. Plaintiff's request for jurisdictional discovery is **DENIED** as moot.

Signed at Houston, Texas, this 29th day of March, 2022.

Andrew S. Hanen
United States District Judge